LittletoN, Judge,
delivered the opinion of the court:
The extra work and extra costs which plaintiff contends it was required by defendant to perform and incur outside the requirements of its contract dated May 29, 1980, are as follows:
Installing ventilating system-$2, 887.00
Installing plumbing fixtures_ 4, 599. 62
Reconstruction of ceilings_ 7,717. 70
Construction of porches- 8, 617.14
Extra plaster work around door frames and borrowed lights- 1, 525. 00
The defendant contends that all the items upon which plaintiff bases its claim were specified as a part of the work required by plaintiff’s contract with the Government and were shown by the drawings and specifications. We think the defendant’s position is correct. The drawings and specifications which are in evidence adequately disclose and refer to all the work upon which plaintiff bases its claim for extra compensation.
An invitation for bids for remodeling certain portions of the United States Veterans’ Hospital at Hines, Illinois, was issued on February 27,1930. The form of contract, the draw *111 ings, and the specifications, under which the work specified in the invitation for bids was to be performed, were available to plaintiff at that time. On March 22, 1930, plaintiff, after an inspection of the premises, submitted its bid for $133,288, which was accepted by the defendant, and a contract was entered into May 29,1930. Plaintiff commenced work thereunder June 28, 1930, and completed the same within the time allowed. The invitation for bids, after specifying certain alterations, also included in the work to be done “changes in and additions to existing construction as shown on the drawings.” Plaintiff proposed to furnish all labor and material and perform all work in strict accordance with the specifications and drawings mentioned therein, and the contract contained similar provisions. In the specifications plaintiff was invited to visit the portion of the buildings covered by the specifications and drawings, to make thorough examinations of the present arrangements and conditions, and to compare same carefully with the new plan. Under the terms of the specifications all such comparative conditions were to be considered by the contractor as a part of his bid on the material to be furnished and labor to be performed, and also for the furnishing of all new materials and labor for the full and satisfactory completion of the work according to the specifications and drawings. Plaintiff visited the site of the work before submitting its bid and was given full opportunity to make a thorough inspection. The specifications provided, among other things, that “Anything mentioned in the specifications and not shown on the drawings or shown on the drawings and not mentioned in the specifications shall be of like effect as if shown or mentioned in both.”
The evidence shows, and we have found as facts, that the specifications and the accompanying drawings, together with a proper inspection of the premises, were sufficient to advise one familiar with building remodeling work of all the work required to be performed upon which plaintiff bases its claim for extra compensation.
1. Ventilating System. — The specifications definitely required work in connection with the ventilating system as a part of the plaintiff’s contract. . On page 43, under the head *112 ing of “Mechanical Equipment,” the specifications stated as follows :
The general conditions set forth at the beginning of the specifications shall govern when practicable for all work in connection with plumbing, heating, ventilating, and electrical work shown on the drawings or specified herein.
Work Included. — This section of the specifications includes the finishing and installation in complete working order of plumbing, sanitary, and storm-sewer connections, hot and cold water with the building, roughing in for cooking equipment, and certain plumbing and other fixtures furnished by the Government, refrigerating units for drinking water, changes in and additions to heating and ventilating system, changes in and extension of conduit and electrical service, light, cooking and power, pipe covering, etc.
Paragraph M, page 7a, of the specifications provided that new materials, for construction not otherwise clearly specified should be of the same character, grade, and finish as that used in similar locations in other parts of the building, and that this included plumbing, heating, ventilating, and electrical equipment. A ventilating system was clearly disclosed and shown by the drawings. Ventilating ducts and registers already in the building were shown on the drawings on the floors of the building on which they were located and the drawings further showed the new work to be performed and the new ventilating ducts and registers, with the sizes thereof and the places where they were to be installed, which ducts and registers were not in the building at the time the contract was made.- The drawings specified the size of the sheet-metal ventilating' ducts and the registers, and there is no evidence that the defendant required plaintiff to install ventilating ducts and registers other than those shown on the drawings or to furnish material therefor different or more expensive than the material of which the ventilating system already in the building was constructed.
2. Plumbing Fixtures. — The material facts with reference to this item of plaintiff’s claim are set forth in findings 6 to 9, inclusive. This item of the claim relates to furnishing and installing thermostatic control valves, recording thermom *113 eters, and continuous-flow bathtubs. The contract is definite and specific in its requirement that the contractor shall furnish this equipment, although defendant furnished tubs then on hand. The specifications on page 43 provided “Special attention is called to the fact that within 30 days after the date of acceptance of bid the contractor must submit to the Director a complete list of the following material * * * giving the name and address of manufacturer and also, when so required for proper identification, the trade name and catalogue number of the following material proposed to be used in the work.”
The items listed thereafter on page 44 of the specifications included “Plumbing fixtures. Thermostatic Regulators for hot water with Recording Thermometer,” and on page 45 of the specifications the term “Plumbing Fixtures as indicated on drawings of new arrangements” is broken down and shown in separate items, among which is listed nine continuous-flow bath tubs to be installed in Unit G, 1st, 2nd, 3rd, and 4th floors, and one continuous-flow bath tub in Unit F of the building. Paragraph IP-35, page 59 of the specifications required the contractor to “furnish and install in connection with each continuous-flow tub an approved thermostatic control valve, etc.” Paragraph IP-35, page 60 of the specifications, provided that the contractor should “furnish and install, where shown on the plans, continuous-flow tubs. * * * Each continuous-flow tub shall be equipped with a recording thermometer * * *.” These provisions are clear and unambiguous, and show positively that plaintiff was required to perform the work and furnish the materials upon which this item of the claim is based. Included in this item of the claim is the claim of plaintiff for compensation for the cost of certain tub fittings for the continuous-flow bath tubs installed. The materials in question were part of those required to be furnished by plaintiff under its contract. They were all used in connection with the installation of the continuous-flow tubs. The specifications, at page 49, after providing that all plumbing fixtures, except those specifically referred to, should be furnished and set by the contractor, stated that the “Plumbing Contractor shall deliver *114 all of the above equipment to tlie building in which the same is to be .placed * * * and shall set up and install each piece of the apparatus .in location shown on the drawings and connect same complete in working order to the water, waste, arid vent piping.”
3. Reconstruction of Ceiling Plaster. — The material facts with reference to this item of the claim appear in findings 11 to 13, inclusive. Paragraph (f), page 6-A of the specification, provided that “All patching and repairing of existing work shall be neatly and substantially performed without conspicuous jointing of the new with existing work. Existing work damaged by the contractor in the performance of his work shall be made, good by the contractor without expense to the Government.” • The greater weight of competent evidence of record shows that plaintiff is not entitled to recover on this item and that a proper inspection of tíre premises at the time the bid was made would have disclosed that the work, upon which this claim is based, was required by the contract and the specifications.
4. Construction of Porches. — The. material facts with reference to this item of the claim are set forth in findings 14 to 16, inclusive. Plaintiff contends that it was not required under its contract, drawings, and specifications to construct the porches, F. B.-l and F. B.-2, described in these findings. In view of the disclosures in the drawings, made a part of plaintiff’s contract, and the provision in the specifications that anything mentioned in the drawings, even though not mentioned or shown in the specifications, should be of like effect as if shown or mentioned in both, we think the work which the plaintiff was required to perform in connection with these porches was required by the contract. An examination of the drawing MF 1-74, which was a part of plaintiff’s contract, discloses that a complete porch is shown from the ground floor to the fourth floor of the building. The drawing is entitled “Enclosed Porch Details,” and includes details of the enclosures, all of which are marked “typical elevations,” “typical details,” “typical plan,” “detail of steel,” “detail of jambs,” etc. The sketch of the porches as a whole is not designated detail or typical, but designated “Elevation *115 of East Side of Porch and Fire Escape.” Sheet MF 1-F2 of the drawing contains a mere outline' of the location of the F. B. porches in the F section of the building with the notation “See sheet MF 1-74.” In regard to porches F. A., the specification, page 3-C, contains the notation that “The porch F. A. as indicated on sheet MF 1-F2 is in another contract and shall, under no circumstances or interpretations, be considered a part of this contract.” It seems clear that unless some such exception were made in regard to the F. B. porches here involved, the plaintiff’s contract required that they be constructed as shown on the drawings. The drawings, made a part of the plaintiff’s contract, showed the details of such construction. The drawings were adequate and sufficiently clear to disclose to the plaintiff at the time of its inspection and bid that construction of these porches was required and no inquiry was made or contention advanced that their construction was not within the terms of plaintiff’s contract'until after the contract had been executed and the work begun. Plaintiff argues that because the first and second floors of séction F of the building were being remodeled under another contract it had the right to assume that such other contract included the F. B. porches on those floors. The evidence does not support the contention that the porches were included in another contract. If assumptions are to be made from the specifications and drawings, the logical one would be that the other contractor of the F section was required to huild the entire series of F. A. porches from the ground to the fourth floor and that the entire F. B. porches were in plaintiff’s contract, because the specifications plainly stated that the’F: A. porches were, under no circumstances, to be considered as a part of plaintiff’s contract but were in another contract. If plaintiff had any doubt at the time it made its inspection and bid as to whether the F. B. porches in question shown in detail on its drawings were included as a part of the'work under its contract, it should have made some investigation or inquiry to determine the matter. The supervising superintendent of construction, under whose direction and approval the specifications and drawings were prepared, was at the site of the work or available at the time plaintiff *116 made its inspection and submitted its bid. Plaintiff commenced work under its contract June 25,1980, and the superintendent of construction ruled on July 17, 1980, that the work necessary to the construction of porches F. B. 1 and F. B. 2 was within the requirements of plaintiff’s contract. A like decision was again made on September 18 and September 22, 1930, and the decision of the superintendent of construction was approved by the Director of the Veterans’ Bureau on April 17, 1931.
5. Plaster Work in forming V-grooves around Door Frames and Borrowed Light Frames. — The material facts with reference to this item of plaintiff’s claim are set forth-in findings 17 to 21, inclusive. The specifications call for a type of door buck and borrowed light frame with a metal fin projecting into the plaster at an inward angle from the edge of the frame, so that the plaster around the frame formed an obtuse angle under the fin and flush with the outside edge of the door buck and borrowed light frame. When plaintiff came to install these door and light frames and perform the plaster work around them, it submitted to defendant for approval a type of frame with the fin projecting at an outward or obtuse angle from the buck or frame and showing the plaster containing a V-groove where it joined the door buck or frame. The type submitted by plaintiff and shown on its shop drawing was approved by the contracting officer as submitted. No claim was made at that time, nor was any claim made until after the work made the basis of this item of the claim was performed, for extra compensation because of the necessity of making the V-groove around the frames made necessary by reason of the type recommended and submitted by plaintiff. The evidence shows that the plaintiff knew at the time it submitted this drawing for approval that the V-groove was necessary with the substituted type of frame. After plaintiff had installed the door and light frames, it submitted a proposal for extra cost for cutting the V-groove around the frames. This proposal was rejected by the defendant on the ground that plaintiff could, if it had so desired, have used the type of *117 frame called for by the specifications. Had this been done, the making of the V-grooves around the doors would not have been necessary. In these circumstances it is clear that no extra work within the meaning of the contract was required by the defendant and no extra work order was issued by the defendant under Art. 5 of the contract.
Plaintiff is not entitled to recover and its petition is dismissed. It is so ordered.
Whaley, Judge; Williams, Judge; Green, Judge; and Booth, Chief Justice, concur.